STATE ex rel. RANKIN et al., Appellees,

v.

ATTORNEY GENERAL, Appellant; Ohio Campaign
to Protect Marriage et al., Appellees.

[Cite as *State ex rel. Rankin v. Attorney General,*
161 Ohio App.3d 521, 2005-Ohio-2717.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 04AP–651.

Decided June 2, 2005.

Donald J. McTigue, for appellees Thomas J. Rankin et al.

Jim Petro, Attorney General, Richard N. Coglianese, Holly J. Hunt and Damian W. Sikora, for appellant.

Langdon & Shafer, L.L.C., David R. Langdon and Jeffrey A. Shafer, for appellees Ohio Campaign to Protect Marriage et al.

McCormac, Judge.

{¶ 1} Respondents-appellees, the Ohio Campaign to Protect Marriage, Reverend K.Z. Smith, Lori Viars, and Phil Burress ("initiative petitioners"), proposed by initiative petition that Article XV of the Ohio Constitution be amended to include the following:

Section 11. Only a union between one man and one woman may be a marriage valid in or recognized by this state and its political subdivisions. This state and its political subdivisions shall not create or recognize a legal status for relationships of unmarried individuals that intends to approximate the design, qualities, significance or effect of marriage.

{¶ 2} On April 20, 2004, the initiative petitioners submitted the proposed constitutional amendment and a summary of the proposed amendment to respondent-appellant, Attorney General of Ohio, for certification in accordance with R.C. 3519.01(A). The summary provided:

The amendment denies the validity and prohibits the legal recognition as marriage in Ohio of same-sex relationships and relationships comprised of three or more persons, and forbids according non-marital relationships a legal status intended to approximate marriage in certain respects.

{¶ 3} On April 28, 2004, the Attorney General, under the signature of the First Assistant Attorney General, issued a certification of the summary as being a fair and truthful statement of the proposed constitutional amendment. The certification provided:

Without passing on the advisability of the approval or rejection of the measure to be referred, but pursuant to the duties imposed on the Attorney General's Office under Section 3519.01(A) of the Ohio Revised Code, I hereby certify that the summary is a fair and truthful statement of the proposed constitutional amendment defining marriage.

{¶ 4} On May 5, 2004, relators-appellees, Thomas J. Rankin and Raymond Zander ("appellees"), qualified electors of the state of Ohio, filed a complaint against the Attorney General and the initiative petitioners seeking (1) a writ of mandamus ordering the Attorney General to withdraw his certification of the proposed summary, (2) a declaration that the summary was not a fair and truthful statement of the proposed amendment, (3) a declaration that the certification of the summary by the First Assistant Attorney General was invalid based upon noncompliance with R.C. 109.06, (4) a declaration that the description of the proposed amendment set forth in the certification was incomplete and misleading, and (5) a temporary restraining order prohibiting the initiative petitioners from circulating further petitions. Appellees also filed a motion for a temporary restraining order and a preliminary injunction.

{¶ 5} On May 7, 2004, the Attorney General filed a memorandum opposing the motion for a temporary restraining order and preliminary injunction, arguing that appellees failed to meet the requirements for a temporary restraining order and advanced claims over which the court had no jurisdiction.

{¶ 6} The initiative petitioners also filed a memorandum in opposition on May 7, 2004, contending that the summary as certified by the Attorney General was a fair and truthful statement of the proposed amendment and that R.C. 3519.01 is unconstitutional.

{¶ 7} On May 7, 2004, the trial court issued a decision and entry partially granting appellees' motion for a temporary restraining order. The court prohib-

ited the initiative petitioners from submitting any petitions to the Secretary of State for verification; the court did not, however, preclude the initiative petitioners from circulating petitions that included the Attorney General's certification.

{¶ 8} On May 20, 2004, the Attorney General, pursuant to Civ.R. 12(B)(1) and (6), filed a motion seeking dismissal of appellees' claims for essentially the same reasons as those set forth in his May 7, 2004 memorandum in opposition. On May 25, 2004, appellees filed a memorandum opposing the motion to dismiss.

{¶ 9} Appellees filed an amended complaint on May 20, 2004, requesting that the court, in addition to the relief sought in the original complaint, issue a preliminary and permanent injunction (1) prohibiting the Attorney General from certifying that the summary of the proposed amendment was fair and truthful and/or ordering the Attorney General to rescind the certification issued on April 28, 2004, and (2) prohibiting the Attorney General from issuing a certification of the summary that failed to adequately describe the amendment by stating that it was a proposed amendment defining marriage and/or to so revise the language of the certification issued on April 28, 2004. The initiative petitioners answered the amended complaint on May 20, 2004.

{¶ 10} On May 28, 2004, the trial court filed a decision and entry partially granting the Attorney General's motion to dismiss. The court rejected the Attorney General's contention that the court was without jurisdiction to consider the R.C. 109.06 claim; however, the court dismissed the mandamus claim, finding that because R.C. 3519.01(A) does not expressly authorize the Attorney General to decertify a previously certified summary, appellees could prove no set of facts upon which they could obtain a writ of mandamus ordering the Attorney General to withdraw his certification of the summary.

{¶ 11} The court held a hearing on the motion for a preliminary injunction on May 20, 2004. Thereafter, on May 28, 2004, the court issued a decision and final entry finding that the Attorney General had improperly certified the summary because it was not a fair and truthful statement of the proposed amendment. In particular, the court determined that the summary was not fair and truthful because it was significantly misleading about the nature of the proposed amendment. The court rejected any argument that the summary would not be misleading because the petition would include the actual language of the amendment in addition to the summary. The court reasoned that since the Attorney General's certification in essence endorses the summary, an ordinary citizen would likely regard the Attorney General's endorsed interpretation as superior to his or her own interpretation of the actual text, given the Attorney General's legal expertise. Accordingly, the court stated that it "[could not] regard the inclusion of the certified summary on the petition as harmless."

{¶ 12} The court also rejected the Attorney General's claim that the certification task is primarily ministerial. The court reasoned that the certification process involves both the application of specialized knowledge and skills of constitutional interpretation to interpret the proposed amendment and the application of interpretive skills to interpret the proposed summary, as well as an analysis of the extent to which the summary differs from the proposed amendment and an evaluation of the significance of those differences. The court stated that such an evaluation should be based upon the Attorney General's knowledge of the relevant statutory and constitutional policies, and, accordingly, it was no accident that the process was statutorily assigned by the General Assembly to the state's highest ranking attorney. Having found that the certification task involves the exercise of discretion, the court concluded that the Attorney General abused his discretion in failing to recognize the misleading nature of the summary.

{¶ 13} As to appellees' remaining claims, the court refused to declare that the certification of the summary by the First Assistant Attorney General was invalid or that the description of the proposed amendment set forth in the certification was incomplete or misleading. The court also refused to order the injunctive relief requested in the amended complaint.

{¶ 14} Addressing the initiative petitioners' constitutional argument, the court found that, although the summary and certification requirements set forth in R.C. 3519.01(A) are not per se unconstitutional, it is unconstitutional to require a summary if the text of the proposed amendment is very short. The court found, however, that, since the initiative petitioners chose to submit a summary for certification, it is not unconstitutional to require certification of the summary.

{¶ 15} The Attorney General timely appeals the trial court's May 28, 2004 judgment, advancing the following three assignments of error:

[1.] Whether the Common Pleas Court erred when it determined it had jurisdiction to hear a claim that the Attorney General erred in determining the summary language in a proposed constitutional amendment was "fair and truthful."

[2.] Whether the Common Pleas Court erred in determining that a "short" constitutional amendment can serve as its own summary.

[3.] Whether the Common Pleas Court erred in determining that the summary language in a proposed constitutional amendment was not "fair and truthful."

{¶ 16} Initially, we must consider an issue that was raised sua sponte by the panel at oral argument—whether this case is moot, given that the proposed constitutional amendment was approved by the electorate on November 2, 2004.

The Attorney General was the only party to properly appear for oral argument and was thus the only party provided the opportunity to address this issue. Appellees appeared at oral argument; however, as they had failed to file a brief and had not, prior to oral argument, obtain the court's permission to argue, they were not permitted to do so. See App.R. 18(C). The initiative petitioners filed a brief, but did not appear for oral argument.

{¶ 17} The Attorney General argued that this case is not moot because it involves an issue that is "capable of repetition yet evading review." We agree. As a general rule, election cases are moot when the relief sought can no longer be granted and an election has already been held. *In re Protest Filed by Citizens for Merit Selection of Judges, Inc.* (1990), 49 Ohio St.3d 102, 103, 551 N.E.2d 150. Nevertheless, when an issue related to an election is "capable of repetition yet evading review," the appeal is not moot and a reviewing court may address the issue. Id. The issue herein raises questions concerning the jurisdiction of common pleas courts to entertain claims related to the scope of the Attorney General's role in the summary and certification process set forth in R.C. 3519.01(A). Because this matter concerns an issue that could be raised in future elections where time constraints may preclude timely judicial decisions, we will address the issue.

{¶ 18} The Attorney General contends in his first assignment of error that the common pleas court did not have jurisdiction to review the Attorney General's certification of the proposed constitutional amendment. As noted previously, appellees did not file a brief and were not heard at oral argument. The initiative petitioners filed a brief that does not expressly address the Attorney General's argument; rather, they argue that R.C. 3519.01(A) is unconstitutional as a restriction upon the right of initiative reserved to the people under the Ohio Constitution.

{¶ 19} Section 1, Article II of the Ohio Constitution vests the legislative power of the state in the General Assembly but reserves to the citizens of Ohio the right to propose constitutional amendments through initiative. *State ex rel. Hodges v. Taft* (1992), 64 Ohio St.3d 1, 4, 591 N.E.2d 1186. The grant to the General Assembly is a delegated power; however, initiative is a reserved power. Id. As such, the power of initiative should be liberally construed to effectuate the rights reserved. Id. at 5, 591 N.E.2d 1186. " 'The general assembly cannot enlarge the power of the people nor can it diminish it.' " Id., quoting *Shryock v. Zanesville* (1915), 92 Ohio St. 375, 385, 110 N.E. 937.

{¶ 20} R.C. 3519.01 provides that those proposing a constitutional amendment by initiative must, by a written petition signed by 100 qualified electors, submit the proposed constitutional amendment and a summary of it to the Attorney

General for examination. R.C. 3519.01(A). If the Attorney General finds that the summary is a fair and truthful statement of the proposed constitutional amendment, he must so certify the petition. Id. A verified copy of the proposed constitutional amendment, together with the summary and the Attorney General's certification, must then be filed with the Secretary of State. Id.

{¶ 21} It appears upon examination of Ohio case law that the precise issue raised by the Attorney General's assignment of error has not heretofore been litigated. Matters related to the summary and certification process have, however, been considered by this court and the Ohio Supreme Court.

{¶ 22} In *State ex rel. Tulley v. Brown* (1972), 29 Ohio St.2d 235, 58 O.O.2d 489, 281 N.E.2d 187, the Attorney General advised the proponents of a proposed constitutional amendment that he had reviewed their petition and summary, had found the summary to be a fair and truthful statement of the proposed constitutional amendment, and was in the process of preparing the necessary certification to file with the Secretary of State. Before the certification was made, opponents of the proposed amendment filed an action in the common pleas court against the initiative petitioners, the Attorney General, and the Secretary of State, seeking, inter alia, to prohibit the Attorney General from proceeding with his intended certification of the proposed amendment.

{¶ 23} The common pleas court ordered the Attorney General to retain the proposed constitutional amendment and summary pending further order of the court. Proponents of the amendment then filed a complaint in the Ohio Supreme Court seeking a writ of mandamus ordering the Attorney General to proceed with the certification.

{¶ 24} At the outset, the court noted that the parties had not raised any constitutional objections to the overall concept of the Attorney General's statutory power of preliminary examination concerning proposed constitutional amendments under R.C. Chapter 3519. The court granted the writ of mandamus compelling the Attorney General to proceed with certification in accordance with R.C. 3519.01 on grounds that the Attorney General had unequivocally stated that he found the summary to be fair and truthful. In dissent, one justice expressly found that R.C. 3519.01 violates Section 1g, Article II, Ohio Constitution because the summary requirement in R.C. 3519.01 is not contained therein.

{¶ 25} In *State ex rel. Barren v. Brown* (1977), 51 Ohio St.2d 169, 5 O.O.3d 136, 365 N.E.2d 887, a committee designated to represent petitioners with respect to a referendum petition against specified portions of a proposed law filed with the Attorney General a referendum petition and summary of the proposed law pursuant to R.C. 3519.01. The petition requested that the Attorney General certify the summary as being a fair and truthful statement of the measures to be referred. The Attorney General apprised the committee that he would not make

the requested certification, because the matters the committee wished to be referred were not subject to referendum and because litigation was pending in the Ohio Supreme Court to determine whether the matters were subject to referendum. The Attorney General claimed that his certification would be a futile act unless the court determined that the matters were subject to referendum.

{¶ 26} The committee filed a mandamus action to compel the Attorney General to certify that the proposed summary was a fair and truthful statement of the measures sought to be referred. Citing R.C. 3519.01, the court stated, "Under this statute, the authority of the Attorney General is limited to whether the summary is fair and truthful. If he determines that it is, he is directed to so certify." Id., 51 Ohio St.2d at 170, 5 O.O.3d 136, 365 N.E.2d 887. The court stated that the Attorney General could not refuse certification simply because he believed that the matter was not a proper subject for referendum. Id. "It is quite clear that the issue of whether the measures sought to be referred are subject to referendum is not involved in the Attorney General's honest and impartial evaluation of whether the proposed summary is a 'fair and truthful statement of the * * * measure to be referred.'" Id. at 171, 5 O.O.3d 136, 365 N.E.2d 887. The court further stated, "Since [the Attorney General's] only reason for refusing certification is that the matters may not be subject to referendum, it is implicit that, in [the Attorney General's] opinion, the summary meets the requirement of being a fair and truthful statement of the matter to be referred." Id. The court found that the Attorney General's role and authority were limited to making this factual determination and, once that determination was made, the Attorney General was required to certify the summary. Accordingly, the court granted the writ ordering the Attorney General to certify the summary as a fair and truthful statement of the measures sought to be referred.

{¶ 27} In State ex rel. Durell v. Celebrezze (1979), 63 Ohio App.2d 125, 17 O.O.3d 326, 409 N.E.2d 1044, the circulating committee submitted to the Attorney General a proposed initiative petition, a summary, and the required number of qualified elector signatures. Finding discrepancies and inconsistencies, the Attorney General rejected the submission. Thereafter, the circulating committee submitted a second proposed petition that included changes to both the text of the proposed law and the summary; however, the new petition had no signatures. The Attorney General determined that the summary submitted with the second proposed initiative petition constituted a fair and truthful statement of the text, issued a certification pursuant to R.C. 3519.01, and transmitted a copy of the text and summary together with a letter of certification to the Secretary of State, attaching a copy of the signatures that had been attached to the first proposed petition. Signed part-petitions were then submitted to the Secretary of State.

{¶ 28} Opponents of the initiative brought an action in the common pleas court attempting to enjoin the Secretary of State from completing the performance of his duties with respect to the part-petitions and from transmitting the petitions to the General Assembly. The trial court denied the injunction, resulting in an appeal to this court.

{¶ 29} On appeal, opponents of the initiative argued that the entire initiative proceeding was a nullity and should be enjoined because the second proposed initiative petition filed with the Attorney General did not contain any signatures. The circulating committee and the Secretary of State, relying on *Tulley*, contended that the portion of R.C. 3519.01 requiring signatures might be unconstitutional and, at the very least, should be so interpreted so as to avoid any possible constitutional conflict. This court declined to address the constitutional question, noting that the dissenting justice in *Tulley* found only the summary requirement of R.C. 3519.01 unconstitutional and did not consider the signature requirement.

{¶ 30} This court ultimately concluded that the circulating committee failed to fully comply with R.C. 3519.01 and that the Attorney General probably should not have certified the summary, since no signatures were included with the second petition. However, we determined that the Attorney General's error in failing to require strict compliance with R.C. 3519.01 did not vitiate the subsequent proceedings. This court explained:

It may well be that the Attorney General could have refused to certify the summary upon the grounds that the signators were not sufficient. However, by acting, the Attorney General in effect determined that there were signators to the petition sufficient to cause him to act pursuant to R.C. 3519.01. He erred in this determination, but such error does not render all subsequent proceedings void. * * *

It would be an absurd result to conclude that all this action, in full accord with constitutional requirements, should be completely vitiated because of the alleged error of the Attorney General in proceeding with certification without a sufficient petition.

* * * With respect to an injunction action, the Common Pleas Court serves as a court of equity. It would indeed be inequitable to vitiate the efforts of all those who acted in reliance upon the Attorney General's action by either circulating or signing the initiative petition merely because of the procedural error of the Attorney General in proceeding without a sufficient petition being before him. We cannot find such noncompliance with R.C. 3519.01 to be of such sufficient magnitude as to deny the petitioners the rights conferred by the Constitution where all constitutional requirements have been met. Strictly speaking, the statutory procedure under R.C. 3519.01 is not part of the initiative process but is a statutory requirement prior to commencement of the

initiative process under the Constitution. The statutory process is complete upon the certification by the Attorney General that the summary is accurate. It is at this point that the constitutional initiative process commences.

We need not determine whether or not the certification by the Attorney General is a necessary requisite to proceeding with the constitutional initiative process since the Attorney General has made his certification. However, we do find that once certification is made by the Attorney General pursuant to R.C. 3519.01, any procedural defect in the proceedings under that section does not affect the validity of the subsequent constitutional initiative process.

*Durell,* 63 Ohio App.2d at 130–131, 17 O.O.3d 326, 409 N.E.2d 1044.

{¶ 31} The foregoing cases support the Attorney General's contention that the common pleas court was without jurisdiction to consider whether the Attorney General properly certified the summary as a fair and truthful statement of the proposed constitutional amendment. In both *Tulley* and *Brown,* the court granted writs of mandamus ordering the Attorney General to proceed with the certification process after the Attorney General had determined that the submitted summaries were fair and truthful statements of the matters proposed. In neither case did the court concern itself with the substance of the summary, that is, whether the summary actually constituted a fair and truthful statement of the proposed matter. Rather, in both cases, the court recognized that R.C. 3519.01 vests the authority to determine whether a submitted summary constitutes a fair and truthful statement of a proposed matter solely in the Attorney General. Indeed, the *Barren* court expressly stated that once the Attorney General makes a factual determination that a summary constitutes a fair and truthful statement of the proposed matter, certification is mandatory. Here, the Attorney General made a factual determination that the summary was a fair and truthful statement of the proposed constitutional amendment and certified the language. If the Attorney General had refused to certify the summary and a proper party later filed a mandamus action, *Tulley* and *Brown* would require the issuance of a writ compelling the Attorney General to certify.

{¶ 32} Moreover, in *Durell,* this court determined that because the statutory procedure under R.C. 3519.01 is merely a proceeding preliminary to the initiative process, any alleged deficiencies in that process, which would presumably include an improper finding by the Attorney General that a submitted summary constitutes a fair and truthful statement of a proposed constitutional amendment, do not affect the constitutional initiative process.

{¶ 33} Based upon the analyses contained in *Tulley, Barren,* and *Durell,* we conclude that the common pleas court was without jurisdiction to determine whether the Attorney General properly certified the submitted summary. In other words, once the Attorney General exercised his authority under R.C.

3519.01(A), the common pleas court was without jurisdiction to consider the exercise of that authority. Accordingly, the first assignment of error is sustained.

{¶ 34} The second assignment of error contends that the common pleas court erred in determining that the Attorney General improperly found that the proposed summary was fair and truthful. The third assignment of error argues that the court incorrectly determined that the statutory requirement of a summary is unconstitutional as it relates to the proposed amendment at issue. Both arguments assume jurisdiction in the common pleas court. We have already concluded that the common pleas court was without jurisdiction to consider the propriety of the Attorney General's actions under R.C. 3519.01. Having so found, the court was also without jurisdiction to consider the constitutionality of the statute. Accordingly, the second and third assignments of error are moot. See App.R. 12(A)(1)(c).

{¶ 35} For the foregoing reasons, the Attorney General's first assignment of error is sustained, rendering the second and third assignments of error moot. Accordingly, the judgment of the Franklin County Court of Common Pleas is reversed and remanded to that court with instructions to conduct further proceedings in accordance with law and consistent with this opinion.

Judgment reversed
and case remanded.

PETREE and FRENCH, JJ., concur.

McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.